## Case No. 12,157.
### RUSSELL v. McCORD.
[2 Flip. 139; 17 N. B. R. 508; 3 Cin. Law Bul. 594.] 1

District Court, N. D. Michigan. March 15, 1878.

BANKRUPTCY — FRAUDULENT SALES TO PARTNER — ATTACHMENT.

1. When a firm is insolvent and there is a sale by one partner to another for a valuable consideration, this does not of itself constitute fraud.

2. Where an execution is levied after the defendant is adjudicated a bankrupt, no lien attaches on the property so levied upon.

[William Brummeller and Vanderwerp were partners in the boot and shoe business. Thomas Griffin was a creditor, as was also Henderson & Co., and others. On the 24th of August, 1870, Henderson & Co., by their agents, applied to the debtor firm for a statement of their affairs, and obtained an exhibit showing that they owed three thousand dollars, and had assets amounting to two thousand one hundred dollars. On this showing, Henderson & Co. advised that Brummeller purchase Vanderwerp's interest in the firm assets, representing that the business would not support both partners, and that if Brummeller should take the business alone, thus reducing expenses, he would probably be able to work out and pay the debts. Henderson & Co. represented they would then give time; and by a friendly course by creditors, Brummeller might be enabled to keep on in business. Accordingly, Vanderwerp transferred and surrendered the firm assets to his partner, who agreed to pay all firm debts, and gave Vanderwerp his notes, aggregating three hundred dollars, for the interest transferred.

1 [Reported by William Searcy Flippin, Esq., and here reprinted by permission. 3 Cin. Law Bul. 594, contains only a partial report.]

This took place August 28th. On the same day, by Henderson & Co.'s advice, and on their request, Brummeller & Vanderwerp gave their note to Henderson & Co. for one thousand and forty-two dollars, the amount of their claim, payable on demand without grace, signed by the firm, and by Brummeller and Vanderwerp individually, and also gave a warrant of attorney with the note. This was done on the representation by Henderson & Co. that they would not use the warrant of attorney and take judgment, unless other creditors gave trouble and made it necessary for Henderson & Co.'s protection. Nevertheless, on the same day, Henderson & Co. caused judgment to be entered on the note, and August 29th execution was levied on the stock of goods then in Brummeller's possession. September 5th, Griffin commenced suit against Brummeller & Vanderwerp, who appeared and contested the claim. October 11th, Griffin obtained judgment for four hundred and twenty-three dollars and thirty-two cents, and caused execution to be levied on the same goods then held by the sheriff's deputy under Henderson & Co.'s execution. September 6th, the day following the commencement of Griffin's suit, a petition in bankruptcy was filed by firm creditors, in which Vanderwerp joined, against Brummeller alone, and he was adjudicated September 15th, nearly a month prior to the time when Griffin obtained judgment, and made his levy. Defendant Thomas McCord was chosen assignee, October 12th, and subsequently received the usual transfer of the bankrupt's estate.

[A bill was filed in this court by McCord, assignee, against Henderson & Co. and the officer holding their execution, to set aside the execution lien claimed by Henderson & Co., on grounds of fraud. McCord was appointed receiver in that suit and, by order of court, converted the property covered by the levy into money. That suit was settled on terms which relieved the assets practically from Henderson & Co.'s levy. The funds in the receiver's hands were then ordered to be turned over to McCord, as assignee in bankruptcy of Brummeller. Griffin having been adjudicated bankrupt in the Eastern district of this state, his assignee [Frank Russell] brought the present suit to establish a lien by virtue of the levy under Griffin's judgment, hereinbefore mentioned, upon the proceeds in the hands of McCord, assignee, and also for an injunction restraining McCord from paying out the funds in dividends or otherwise.] [2]

Chas. W. McLaren, for complainant.
N. A. Fletcher, for defendant.

WITHEY, District Judge. The case is before me on motion for an injunction. It is claimed that Griffin's execution created a valid lien on the goods as the property of the firm of Brummeller & Vanderwerp, because the transfer by one partner to the other of the firm effects was fraudulent, being intended to hinder, delay and defraud creditors, and also was without consideration. The bill and an affidavit made by Brummeller constitute the showing. The affidavit of Brummeller negatives all charges of positive fraud, or fraud in fact, on the part of the partners, in the sale of the firm effects by Vanderwerp to his partner. The transfer was made in the hope and expectation that Brummeller would be able, by the indulgence of their creditors and a reduction of expenses, to work through and pay the debts of the firm. Henderson & Co.'s agent had encouraged this view; they were the largest, or among the largest, creditors, and recommended the course which was pursued. The agent represented to the debtor firm Henderson & Co.'s disposition to be indulgent as creditors, and not press payment, and that they would not make use of the warrant of attorney to take judgment unless driven to do so by other creditors. It appears that both Brummeller and Vanderwerp placed implicit reliance upon those representations and assurances, and as debtors are naturally inclined, they took the most hopeful view of their affairs, and acted with the best intention, with no view to hinder, delay or defraud creditors. It may be, and probably is, true that Henderson & Co.'s agent was acting in bad faith, but they gained nothing by the course pursued.

Was, then, the sale by one partner to the other of the firm assets, a fraud in law upon the firm creditors, of whom Griffin is one? This question is raised under the statute of frauds, and not under the bankrupt act.

It is undoubtedly the rule, when the statute of frauds is under consideration, that positive intent to commit fraud—fraud in fact, as it is called—and also constructive fraud, denominated fraud in law—that is, when the necessary effect of a transfer is to hinder or delay creditors, without positive intention—alike render a sale void as to creditors, who, through judgment and execution, or by bill in equity, attack the transfer. It appearing there was no actual fraud, was there constructive fraud? A transfer by one member of firm to his co-partner, of firm assets, under ordinary circumstances, is as permissible and valid as a transfer by one individual of his property to another individual. Such transfer passes title, and is good against all the world unless the necessary effect is to defraud creditors. It has often been held that where a firm is insolvent, that of itself will not avoid a bona fide sale to one of the partners of the joint assets, and it cannot be necessary to refer to the judgments which have so determined. Ex parte Peake, 1 Madd. 346; Lindl. Partn. 758. What is claimed is, that the transfer, by one partner, of the firm property was necessarily fraudulent, because it hindered and delayed the joint creditors in the collection of their debts. We

are unable to understand how the effect claimed by complainant necessarily resulted from the transfer. The goods and entire assets in the hands of Brummeller, after the sale to him, were liable for the debts of firm creditors who should come armed with judgment and process as much as before the sale. Both partners, and each are liable to the joint creditors, and the individual property of both partners remained liable for joint debts after, as before, the transfer. No part of the firm property had been withdrawn from the reach of firm creditors. Vanderwerp withdrew no assets of the firm from the business, and he is not shown to owe individual debts. How, then, does it appear that the firm creditors were hindered or delayed in the collection of their debts by the mere act of one partner selling to the other? It is claimed that Brummeller owed $300, private debts, besides the notes given Vanderwerp, aggregating $300 for his interest in the firm property, and that in view of the firm's insolvency, the effect in consequence of bankruptcy is to postpone firm creditors to these individual creditors. If we concede such to be the effect in the bankruptcy, which would not be the case as to the $300 indebtedness to Vanderwerp, as he should not be allowed, being one of the debtors, to share in dividends as against firm creditors, how does the effect produced by the bankruptcy proceedings commenced after the transaction we are investigating, render the previous sale, constructively fraudulent, as hindering or delaying creditors? Bankruptcy, which followed very soon after the sale, was not the necessary result of the sale.

It was the entering of judgment against both members on the note, and warrant of attorney by Henderson & Co., and their levy on the goods in Brummeller's possession, in violation of Brummeller & Vanderwerp's understanding of the treatment they were to receive from those creditors, which precipitated the bankruptcy proceedings.

The sale was prior to, and should be judged independently of the subsequent bankruptcy proceedings, caused by the action of one of their creditors, and not by one partner selling to the other. The bankruptcy was not the result of the sale, and if not, there was no constructive fraud in the sale.

The following judgments fully sustain the views we have expressed: Ex parte Ruffin, 6 Ves. 119; Ex parte Williams, 11 Ves. 6; Howe v. Lawrence, 9 Cush. 553; Robb v. Mudge, 14 Gray, 534.

But it is said the sale was without consideration. There is no ground for this proposition, inasmuch as Brummeller's agreement to pay all the firm debts was a good consideration, and further, he gave his notes to his partner for $300.

Complainant's execution was levied after the petition in bankruptcy was filed by firm creditors against Brummeller, on which he was adjudicated, and when the goods were in the latter's possession. No lien could therefore attach against the assignee in bankruptcy, unless the sale to Brummeller was fraudulent in fact, or by necessary construction of law, so that the goods still remained at the date of the levy, firm assets and firm property. Such not being our view of the facts, the injunction asked is denied.